A. C. STIRITZ *et al.* Appellants, *vs.* THE BIG MUDDY MINING COMPANY *et al.* Appellees.

*Opinion filed February 20, 1913.*

1. LEASES—*when coal lease cannot be said to have been delivered.* A lease of coal rights signed by the president of a coal company and handed to a third party with directions to submit it to the secretary and the attorney of the company, and if satisfactory to them to have the secretary attach his name and the corporate seal thereto, but which was turned over by the third party, who was not an officer or agent of the company, to the lessor without having carried out the instructions and without notice to the company, cannot be said to have been delivered so as to be binding upon the company.

2. SAME—*when coal company cannot be said to have accepted and acted upon a new lease.* A company engaged in mining coal under an assigned lease of the coal rights cannot be said to have accepted and acted upon a new lease, which had been signed by the president of the company but handed by a third party to the lessor contrary to the president's instructions and without the knowledge of any officer or agent of the company, where the company repudiated the act of the third party at the first opportunity after learning of the unauthorized delivery of the lease and asserted its rights under the assigned lease.

APPEAL from the Circuit Court of Williamson county; the Hon. BENJAMIN W. POPE, Judge, presiding.

W. W. CLEMENS, and DENISON & SPILLER, for appellants.

James H. Martin, Hosea V. Ferrell, and William H. Warder, for appellees.

Mr. Justice Cooke delivered the opinion of the court:

Appellants, A. C. Stiritz and Antonia Stiritz, his wife, instituted an action of ejectment in the circuit court of Williamson county against the Big Muddy Mining Company, the Cambria Coal Company, and other defendants who were merely nominal parties, to recover the coal and mineral rights and certain surface rights in 340 acres of land in Williamson county. A trial was had before the court without a jury and resulted in a judgment in favor of the defendants and against the plaintiffs for costs of suit. From that judgment the appellants have appealed to this court.

The controversy in the case arises out of the execution by appellants of two mining leases or grants, one executed on May 11, 1904, and the other dated November 19, 1906, but executed by appellants on March 11, 1907. On May 11, 1904, appellants were the owners in fee simple of the 340 acres of land in question. On that date they executed and delivered to John Colp and C. A. Gent a mining lease, of unlimited duration, for all the coal underlying said land that could be economically mined, together with certain surface rights to be used in connection with the mining of coal on the premises. By the terms of this lease Colp and Gent agreed to pay to the lessors a royalty of two cents per ton on all coal mined, and the lease provided that thirty days' default in the payment of royalty, after written demand therefor, should forfeit all rights of the lessees in the premises. Provision was also made for the payment, after the first year, of a fixed sum as advance royalty to the lessors until mining operations should be commenced, and the lessees agreed to begin sinking a shaft or building a railroad track within twelve months. Thereafter litigation arose between appellants and Colp and Gent, in which appellants

attacked the validity of the lease last mentioned. This resulted in the entry of a decree by the circuit court of Williamson county on October 14, 1905, holding the lease valid and binding upon appellants. Shortly afterwards, and on December 13, 1905, Colp and Gent by a written instrument assigned said lease and conveyed all their rights and interests in the premises to appellee the Big Muddy Mining Company, the consideration for this assignment being the assumption by the mining company of all obligations imposed on Colp and Gent by the terms of this lease, and the payment to them of an additional royalty of three cents per ton on all coal taken from the premises.

The Big Muddy Mining Company was organized and incorporated by A. B. McLaren, W. O. Potter and Potter's wife. During January, 1906, these parties sold to D. E. Notley, of Cherry Tree, Pennsylvania, all the stock of the corporation, and assigned to him all except two shares of the stock, Potter and McLaren each nominally retaining one share. These three persons thereafter composed the board of directors of the company, and Notley became president, McLaren vice-president and Potter secretary of the company. On August 23, 1906, Notley entered into a written agreement with J. L. Mitchell, David Orr, and others, whereby, after reciting that he was then the owner of all the stock of the Big Muddy Mining Company, he agreed to turn over to Mitchell and the other parties to the contract, or to a corporation to be formed and incorporated by them, all the stock of the Big Muddy Mining Company upon receiving a note for a certain sum, executed by the corporation to be formed and endorsed by the individual incorporators. The agreement provided that Mitchell should be the first president of the new corporation. During the latter part of the month of September following, David Orr, on behalf of the parties who were to organize the new corporation, took charge of the premises in question and expended about $35,000 furnished him

257 – 35

by those parties, in developing the coal mining rights. The corporation which was, under the agreement with Notley, to be formed by these parties was not incorporated until May 23, 1907, when it was organized under the laws of this State under the corporate name of "The Cambria Coal Company," and the property has since been operated by that company.

After assuming the management of the property, Orr, some time prior to November 19, 1906, learned of the litigation between appellants and Colp and Gent, which had resulted in a decree, on October 14, 1905, upholding the validity of the lease, and was informed that Stiritz was still insisting that the lease was void and was threatening to take the case to a higher court for review. He thereupon entered into negotiations with Stiritz for a new lease providing for a royalty to the lessors of three cents per ton on all coal mined. Stiritz did not at that time know that Colp and Gent had assigned the lease of May 11, 1904, to the Big Muddy Mining Company, and Orr did not advise him of that fact. Stiritz refused to make a new lease unless it was made subject to the Colp and Gent lease, and it seems to have been Orr's purpose to obtain a lease which would become effective only in case the Colp and Gent lease should be held void upon appeal or writ of error. About November 19, 1906, Stiritz and Orr called upon an attorney and directed him to prepare a new lease from appellants to the Big Muddy Mining Company. Orr testified that the provisions of this lease were dictated to the attorney by Stiritz and that he (Orr) did not remain in the attorney's office during all the time the lease was being prepared. After the lease, which was in duplicate, had been prepared by the attorney, both copies were taken by Orr, who on the same day, and without reading the same, mailed them to Notley. The latter kept them for some considerable time and until Orr had occasion to make a trip to Pittsburg. Upon his arrival at Pittsburg, Orr telephoned

Notley at his home in Cherry Tree and requested Notley to meet him in Pittsburg. Notley went to Pittsburg, taking the instruments with him, and, without ever having read the same, signed one copy as president of the Big Muddy Mining Company, and gave this copy, together with the one which he did not sign, to Orr, and directed the latter to submit them to Mitchell and to the attorney representing the parties who were then developing the property, and if they approved them, to have Potter, as secretary of the Big Muddy Mining Company, sign the copy which he (Notley) had signed as president of that company and affix the corporate seal of the company thereto. Instead of following these instructions, Orr, upon his return, and without submitting them to Mitchell or to the attorney designated by Notley, left both copies with the cashier of a bank at Johnston City, who was a notary, and requested him to have appellants sign and acknowledge the lease. On March 11, 1907, appellants signed and acknowledged both copies of the lease at the bank, and the notary thereupon delivered them to appellants, who a short time thereafter delivered to Orr the copy which was signed only by appellants and retained the copy which had been signed by Notley. Orr testifies that when Stiritz came to his hotel and handed him one copy of the lease, he (Orr) told Stiritz that he ought to have both copies, as neither had yet been fully executed. Stiritz denies this conversation, and says that when he told Orr he was keeping one copy, Orr replied, "It is all right."

By the terms of this instrument of November 19, 1906, appellants leased to the Big Muddy Mining Company all the coal underlying the 340 acres of land, together with certain surface rights, in consideration of the payment to them of a royalty of three cents per ton upon all coal taken from the premises. It was also provided that if the lessee should at any time be in default in the payment of royalty for a period of thirty days after written demand therefor,

it should forfeit all right to mine or otherwise hold and enjoy the premises. The lease also contained the following provision: "This instrument is made subject to any and all legal rights (if any) held under a prior lease by the party of the first part (Stiritz) to John Colp and C. A. Gent, which said prior lease the party of the second part (Big Muddy Mining Company) agrees to acquire if there are any legal rights existing thereunder." The copy of this lease which was offered in evidence is signed by appellants and by "D. E. Notley, president of the Big Muddy Mining Co.," and was acknowledged by appellants before a notary public on March 11, 1907.

On July 2, 1907, appellants served a written demand upon the Cambria Coal Company for a statement showing the amount of coal taken from the premises during April and May of 1907. On the following day appellants were furnished with such statement, signed by David Orr. On July 5, 1907, appellants made written demand upon the Cambria Coal Company for royalty at the rate of three cents per ton on the coal taken from the premises as shown by said statement, and notified the company that unless the said sum should be paid within thirty days the lease would be declared null and void. On July 31, 1907, Orr furnished another sworn statement of the amount of coal taken from the premises up to that date, and thereafter, on September 19, 1907, sent to appellant A. C. Stiritz, by mail, a communication purporting to be signed by the Big Muddy Mining Company, by David Orr, manager, and by the Cambria Coal Company, by David Orr, secretary, advising him that the sum of $58.24, being in full for royalties accrued under the lease of May 11, 1904, had been deposited to his credit in the Johnston City State Bank. Nothing further appears to have been thereafter done in the matter until April 22, 1909, when the appellants made written demand upon the Big Muddy Mining Company for the payment of all royalties and rentals provided to be

· paid under the provisions of the lease of November 19, 1906, and notified said company that its failure to make said payment for a period of thirty days would be relied upon as a forfeiture of all its rights in the premises. A similar demand and notice were on July 2, 1909, served upon the Big Muddy Mining Company and upon the Cambria Coal Company, and this was followed by a written demand for possession, served upon both companies on August 10, 1909. Thereafter, on March 28, 1910, this suit was instituted.

Propositions of law and findings of fact were submitted by the parties. The court adopted the findings of fact submitted by appellees and rejected those submitted by appellants. By these findings of fact the court, among other things, found that the lease of November 19, 1906, was never delivered, and that the mining company had never accepted, acted upon or worked under that lease. These findings were fully warranted by the evidence. When Notley, as president of the Big Muddy Mining Company, signed the instrument and handed it to Orr, he gave the latter specific instructions to submit the instrument to Mitchell and to the attorney representing the parties who afterwards organized the Cambria Coal Company and who were then the beneficial owners of the coal rights in the premises, and directed him to deliver it to appellants only after it had been approved by Mitchell and the attorney. Although Orr did sign his name to a subsequent notice to appellants as manager of the Big Muddy Mining Company, yet the proof shows that he was neither an officer of that company nor in its employ, as an agent or otherwise. He was not authorized to deliver the instrument to appellants until after it had been submitted to and approved by Mitchell and the attorney designated by Notley, and his action in delivering it to the notary, whereby it came into appellants' possession without the approval of Mitchell and the attorney for the beneficial owners of the coal rights, did not constitute de-

livery by the mining company. (*Williams* v. *Merritt,* 23
Ill. 623; *Thornton* v. *Boyden,* 31 id. 200.) The proof
further shows that Orr did not inform Mitchell or the
attorney for the beneficial owners of the delivery of the
instrument to the notary, or of the fact that Stiritz had
returned one copy of the lease to him, until after the con-
troversy had arisen over the rate of royalty which Stiritz
was entitled to receive. This controversy arose when the
first royalties were due and payable. The Big Muddy Min-
ing Company and the Cambria Coal Company then, upon
being informed of appellants' claim, refused to ratify Orr's
actions in the matter, and thus at the first opportunity no-
tified appellants that they were operating under the lease
of May 11, 1904, and not under the instrument of No-
vember 19, 1906. These facts justified the court in finding
that the mining company had never accepted, acted upon
or worked under the latter instrument.

Appellants' whole case is predicated upon the theory
that the lease of November 19, 1906, was binding upon the
Big Muddy Mining Company and that it accepted the pro-
visions thereof, and the findings of fact that there was no
delivery of the instrument by the mining company, and that
it never accepted, acted upon or worked under the same,
fully sustained, as they are, by the evidence, were sufficient
to justify the court in rendering judgment in favor of ap-
pellees and against appellants for costs of suit.

Complaint is made of the action of the court in passing
upon the propositions of law which were submitted. These
propositions covered a wide range, bearing upon questions
which would only become important in case it should be
found that the Big Muddy Mining Company had delivered
the lease of November 19, 1906, or had accepted or worked
under its provisions. With findings of fact sustained by
the evidence against the appellants on these questions, the
action of the trial court in passing upon the propositions
of law bearing upon other phases of the case, even though

erroneous, would not entitle appellants to a reversal, and for that reason it would be useless to consider them here.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*