## WILLIE P. WESTON v. EDWIN M. WESTON.[1]

October 9, 1925.

No. 24,478.

**New trial granted on question whether deed was irrevocably delivered.**
    In an action to confirm title to real estate in the grantee named in a deed, executed and delivered to a third party with instructions to deliver the same after the death of the donor, *held*, that the evidence bearing upon the proposition that there was an irrevocable delivery of the deed is so against such delivery that there should be a resubmission of the case in the interests of justice.

    See Appeal and Error, 4 C. J. p. 1193, § 3232; Deeds, 18 C. J. p. 438, § 541.

Action in the district court for Dodge county. The case was tried before Senn, J., who ordered judgment in favor of plaintiff.

[1]Reported in 205 N. W. 434.

Defendant appealed from an order denying his motion for a new trial. Reversed.

*Brown, Somsen & Sawyer,* for appellant.

*Edgerton & Dohs,* for respondent.

QUINN, J.

Action to confirm title, in plaintiff, to an undivided one-half interest in a 400-acre farm which he claims to own, under and by virtue of a certain deed of conveyance, signed on July 26, 1921, by his brother, Llwellyn M. Weston, since deceased. The cause was tried to the court, findings made and judgment ordered in favor of plaintiff. The defendant, Edwin M. Weston, made a motion, as an individual and as representative of the deceased's estate, for amended findings or for a new trial, and appealed from an order of the district court denying his motion.

It appears that the deceased was a farmer, owning a farm in Olmsted county, referred to as the Rochester farm, and one of 400 acres in Dodge county. He also owned a real estate mortgage of $29,000, live stock and farm implements of the value of about $3,000, some personal property such as household goods and personal belongings, a small amount of money in a bank subject to check, and he carried three insurance policies, upon his life, of $2,000 each, one of which was payable to his estate and in the other two his brother Edwin, was named as beneficiary. His wife predeceased him about three months. There were no children. His parents were dead and he had no brothers or sisters living save alone the two brothers who are parties to this action. He died at Rochester on August 28, 1921, following a surgical operation, at which time he was owing $11,872.15.

In November, 1919, the deceased was owing a considerable amount to his niece, Lou Barton, and at that time, his wife joining, he deeded the Rochester farm to her on account of the amount he was owing her, and because of some present which had been promised her. This deed was not delivered nor recorded until after the death of the grantors therein named.

In the spring of 1921, decedent's health began to fail him. It became apparent that he must undergo a surgical operation. John Swendiman was his attorney and trusted friend. On June 13, 1921, Swendiman prepared a deed to the 400-acre farm, conveying it to the two brothers, share alike, also a bill of sale assigning the live stock and farm implements to Edwin, and an assignment of the real estate mortgage to Edwin. He then prepared a will for the deceased to execute. Llwellyn signed all of said instruments, so prepared by Swendiman, and then delivered them to Swendiman and instructed him orally to deliver them, together with the Lou Barton deed, to the proper parties after his death. On the following day, decedent executed his several notes, payable upon demand, as follows: One to Marion Hayes for $3,300; one to Marion Meade for $3,300; one to Blanche Meade for $2,150; and one to Fannie Bailey for $2,150, amounting, in the aggregate, to $10,900, being the amount which he was owing his wife at the time of her death. These notes were filed against the estate and constitute a part of the $11,872.15 indebtedness above mentioned.

The will provides for the payment of funeral expenses and all just claims, legacies to the amount of $29,000, gives the 400-acre farm to the two brothers, share and share alike, and provides that, upon the death of the plaintiff, his interest revert to Edwin M. and his heirs, and that the balance of the property go to the brothers, share and share alike, and named the brother Edwin, and John Swendiman as executors. The deceased went to Rochester for medical treatment in August. While there, in wait, he wrote a letter to his brother Edwin, dated August 23, 1921, in which he stated that he had changed his bank account so that Edwin might check against it in case anything happened to him, gave specific directions as to the disposition of certain household goods and personal belongings, and suggested how the debts might be paid from the insurance and the proceeds from the farm and live stock, in case he did not survive the operation, and stated that he thought the operation would be successful. The operation was performed a day or two later and he died on the twenty-eighth day of the same month.

Swendiman failed to qualify as executor, but Edwin qualified and became the sole representative of the estate.

In his letter of August 23, the deceased mentioned the giving of the notes referred to in settlement of what he owed his wife, and how they might be paid, as follows:

"The insurance can go on these notes and pay the balance out of the interest on mortgage and income from farm. Don't think you will have to sell the Monroe mortgage, as I think Marion Meade would let hers run over another year, if you talk to her. John Swendiman has my will and the deeds, and bill of sale, and he will help you in any way. Hope you and Will will live to get some good out of the stuff, and talk it over with Will so he will understand it. I feel that I will go through the operation. In case I don't, you will have this to help you."

Swendiman turned over all of the papers, which the deceased had left with him, to the executor. The deed to the Rochester farm was recorded. The other papers were all withheld from record, except the will, which was filed with the probate court. The executor employed an attorney to advise him in the premises. On October 28, 1921, Mr. Swendiman and the two brothers met Mr. Somsen, the attorney, at the latter's office, for the purpose of going over matters pertaining to the estate. All of the papers, which had been delivered by Swendiman to the executor, were produced. They were all looked over and fully discussed, especially as to what should be listed with the estate. The provisions of the will and the deed, and the legal effect of same to the 400-acre farm, were talked over, and it was finally agreed that the farm should go into probate with the rest of the property, including the proceeds of the two insurance policies in which Edwin was named as beneficiary. The executor then received all of the papers and subsequently prepared an inventory of decedent's property, including the 400-acre farm, the $29,000 mortgage, the live stock and farm implements covered by the bill of sale, and the proceeds of the three insurance policies, and filed the same with the probate court. He then collected the interest due on the mortgage for that year, obtained the proceeds

from the farm, and accounted for the same as assets in his hands belonging to the estate. Thereafter, he leased the farm for the ensuing year and expended something like $1,000 in repairing buildings and erecting new ones thereon.

At the trial, the two brothers, Mr. Swendiman and Mr. Somsen testified as to the agreement reached at the conference on October 28. In his memorandum the trial court states, with relation thereto, in effect, that the two brothers and the executor agreed that all of the property covered by the bill of sale, the insurance, the Monroe mortgage, and the 400-acre farm, should all go into the estate and be subject to probate. The situation is no different than as though a stranger had been acting as executor. It is not suggested, by either brother, that any deception was indulged in by anyone at the conference.

We think the proofs and circumstances are so against the proposition that there was an irrevocable delivery to Swendiman that there should be a resubmission of the case in the interests of justice. The execution of the deed, the assignment of the mortgage, the giving of the bill of sale, and the execution of the will, all at the same time, the placing of them in the hands of the depositary, the feeling of Weston that he might not survive the operation which he was about to undergo, the lack of very definite testimony as to what his instructions to Swendiman were, coupled with the other attending circumstances, seem to indicate not more than a purpose that the deed should be effective if he did not survive the operation. If this be so, the delivery to Swendiman was of no effect. Swendiman was Weston's attorney and legal advisor. Under the circumstances, could Weston have withdrawn the papers from Swendiman on the day following the delivery of them to him? If so, then there was no sufficient delivery to support a gift.

If there was an irrevocable delivery to Swendiman, then was there a refusal on the part of the grantees named in the deed to accept of the gift? While it may be said that the cause was not tried upon the theory that the plaintiff declined to accept of the gift at the Winona conference, yet, if he did, then the deed was in-

effective for any purpose. This view of the case leads to another trial.

Reversed.

WILSON, C. J. (dissenting.)

I cannot concur.

(1) The definite instructions that the deed was to be delivered upon the death of the grantor bring this case within the doctrine of Hagen v. Hagen, 136 Minn. 121, 161 N. W. 380, L. R. A. 1917C, 964, and Ingersoll v. Odendahl, 136 Minn. 428, 162 N. W. 525. The rights of the parties were fixed by the delivery of the deed. Such is the positive and undisputed evidence. To my mind there is nothing surprising in the decedent being satisfied with a life estate which the deed transaction reserved to him. His expression of satisfaction of being "through with the land now" and "that he wouldn't have that to worry about" cannot be reconciled upon any other theory, but this expression of the grantor is consistent only with an intention and understanding of having conveyed title by the deed.

(2) I cannot follow the suggestion that the Winona conference agreement may amount, on the record as it now stands, to a refusal by the grantee to accept the deed. This suggestion is attributed to the circumstances and acts of the parties, not resting upon any specific language indicating an intention to refuse to accept. There is evidence to the effect that respondent told his brother, the other grantee, to put the deed on record. The custodian had delivered the deed to the brother. The record is barren of the language used in the Winona conference, but there is no intimation or reference given by any witness that respondent intended to reject the deed of absolute conveyance in lieu of a life estate given him under the will. I am satisfied that he never had any such intention. In fact the case was not tried upon any such theory and it is apparent that neither side assumed to put in any evidence for or against such theory.