# IN RE APPLICATION TO REGISTER TITLE TO REAL ESTATE.
## ANNA MELVINA CLOUTIER v. DELVINA CHAREST AND ANOTHER.[1]

November 1, 1940.

No. 32,432.

*George G. Chapin,* for appellant.
*Joel E. Gregory,* for respondent.

HOLT, JUSTICE.

In this proceeding to register the title to land known as 718 Bald Eagle avenue, White Bear Lake, the only question presented by the appeal is whether the evidence sustains the finding that a deed thereto, signed by appellant as grantor, was legally delivered to respondent, the grantee therein. These facts are conceded or conclusively established: Appellant, a widow, now about 70 years old, the mother of respondent, about 43 years of age, owned the

[1]Reported in 294 N. W. 457.

title in fee simple to this land, her homestead, when, in 1932, she signed a deed conveying it to respondent. The deed was duly witnessed and acknowledged, and by the grantor handed to the grantee named. The evidence as to what thereafter took place is conflicting. Respondent testified that on or about May 15, 1932, while living with appellant, the latter expressed a desire to sell the home for $3,000; that respondent asked that she be permitted to buy it at that price; that respondent then had over $3,500 in the bank at White Bear Lake in a joint account with appellant; that appellant agreed to sell and convey to respondent the home for $3,000; that she handed the bankbook to appellant, who stated that she would go to the bank with Mrs. Mergens, another daughter, and have the deed made and give it to respondent; that this was done; the $3,000 of respondent's money was withdrawn; the deed was brought back and delivered by appellant to respondent; that as the latter finished reading the deed Mrs. Mergens took hold of respondent's arm and appellant forcibly took the deed away and with Mrs. Mergens went into the bedroom and locked it in appellant's cedar chest. She also testified that to her repeated requests for the deed appellant always promised to return it later. Appellant, on the other hand, testified that her price for the home was $3,500; that it was not her intention to pass title to respondent by the giving of the deed until appellant's death; that the $3,000 she drew from the joint account in August, 1932, was her money and not respondent's; that when, in October, 1932, this deed to the home was made by her and handed to respondent to read, respondent asked appellant whether Christine, the wife of appellant's son, who was then living upstairs in the home, would continue to live there, and, on being told that she would, respondent said she would not live under the same roof with Christine, and, in a rage, tore the deed into pieces and threw them on the floor. Both

parties adduced corroborative testimony of their respective versions of the transaction.

Of course, if the mother merely handed the daughter the deed to read with no present intention to pass title to the daughter, there was no legal delivery. Nor was there such delivery if the daughter refused to accept it, indicating such intention by destroying the deed. On the other hand, if the mother delivered the deed to the daughter with the intention to thereby pass title, and the daughter accepted it, the mother could not, by forcibly or otherwise repossessing herself of the deed, reacquire title. Nor if there had been such a delivery as to pass the title to the daughter could the title revert to the mother by the destruction of the deed by the daughter or anyone else. Whether delivery of a deed has been made so as to pass title from the grantor to the grantee is a fact issue to be determined by ascertaining that the grantor intended such result from what took place. A delivery valid in law does not necessarily mean a manual handing of the deed by the grantor to the grantee. It may be delivered and received by an agent of either party to the deed. The grantor may make a legal delivery by causing the deed to be recorded without it first coming into the hands of the grantee. It may be delivered by the grantor to a third party, if there be no right reserved to the grantor to recall it. The subject of delivery is quite fully treated and authorities cited in Babbitt v. Bennett, 68 Minn. 260, 71 N. W. 22; Ingersoll v. Odendahl, 136 Minn. 428, 162 N. W. 525; Exsted v. Exsted, 202 Minn. 521, 279 N. W. 554, 117 A. L. R. 554. Since there is no dispute between the attorneys as to the law in respect to delivery of deeds so as to pass title to the land thereby conveyed from grantor to grantee, no further discussion is needed.

The eighteenth finding is challenged as not sustained by the evidence. The part thereof which is determinative of this appeal is this, in substance, that on or about May 15,

1932, appellant sold her home, the land herein involved, to respondent and delivered to her a deed thereto for the consideration of $3,000 paid. From what has already been stated, the only conflict in the evidence is as to the amount of the purchase price, the ownership of the $3,000 appellant withdrew and appropriated from their joint bank account, and what actually happened to the deed handed to respondent by appellant. The court properly gave the parties wide range in receiving testimony touching the source and origin of the joint bank account, and the financial and other dealings between the mother and daughter. If the full purchase price asked for the home was received by the mother from the daughter's money it would tend strongly to show that the deed the mother handed the daughter conveyed the title the mother had, and that the latter intended the same to pass by the delivery of the deed. The evidence is not of the same character as that which caused a new trial in Weston v. Weston, 164 Minn. 384, 205 N. W. 434. An attentive reading of all the testimony adduced is convincing that the part of the determinative finding referred to is fairly sustained. No benefit to the legal profession and certainly none to the parties involved can result from a further disclosure of the evidence or a consideration of why this proceeding was instituted or why appellant or her other daughters caused respondent to be examined for insanity and, when that failed, to have her put under guardianship. It may be stated that a reading of the cold record shows the testimony of respondent to be more direct, frank, intelligent, and reliable than that of appellant.

Because the proceeding is one to register title, many findings necessary and appropriate therein were made. One of these was that the taxes on the land to be registered had been paid. Upon appellant's motion to amend that finding the court added this paragraph to the findings of fact: "That the taxes assessed against said property for the years

1931 to 1937 inclusive were paid with funds belonging to the applicant" (respondent). This additional finding is assailed as not supported by the evidence. We conclude that there is evidence to sustain this finding. Respondent and appellant lived together in this home most of the time after their joint bank account was established. Appellant's income is not clearly shown. Respondent testified she had a steady monthly income of about $100 a month, and also that, from the time the deed was given her, she gave appellant the cash money to pay the taxes on the home as the same became payable.

The order denying a new trial is affirmed.