# AGNES L. CASKEY v. ALICE LEWANDOWSKI AND OTHERS.[1]

March 9, 1951.

No. 35,261.

*Drill & Drill* and *A. M. Joyce,* for appellant.
*Grannis & Grannis,* for respondents.

[1]Reported in 46 N. W. (2d) 865.

LORING, CHIEF JUSTICE.

One of the grantors of a quitclaim deed brought this action against her grantee and subsequent purchasers to have the quitclaim deed declared void for fraud, to recover damages, and to obtain other equitable relief. One special question was submitted to the jury, and the court tried the remaining issues of fact. The findings of the court and jury were in favor of defendants, and the court ordered judgment accordingly. Plaintiff moved for amended findings of fact and conclusions of law and for judgment notwithstanding or for a new trial. This motion having been denied, plaintiff has appealed.

All the parties to this action are related either by blood or marriage. Plaintiff-grantor, Agnes L. Caskey, is the daughter of defendant-grantee, Alice Lewandowski; the sister of defendant Helen Lewandowski Catton; and the sister-in-law of defendant D. N. Catton. The Cattons now hold title to the disputed land under a quitclaim deed from defendant Alice Lewandowski.

On July 27, 1934, and for some time prior thereto, Michael Lewandowski, plaintiff's father, held title to the premises involved in this suit, said premises being a nine-room dwelling house and two lots situate in the city of South St. Paul. On the above date, Michael Lewandowski and his wife, Alice, executed a quitclaim deed of the above-described premises to plaintiff. The deed was thereupon delivered by the grantors to Lewis C. Shepley, who, at the direction of the grantors, placed the deed in a sealed envelope and endorsed thereon the following memorandum:

"Deeds from Michael Lewandowski and Alice Lewandowski to be held by me and surrendered to the grantees after the death of the survivor or sooner if instructed to do so by both grantors or the survivor."

October 12, 1943, plaintiff and her husband signed a quitclaim deed to the disputed property and delivered it to defendant-grantee, Alice Lewandowski. She, in turn, deeded the property to the Cattons. The deed to plaintiff, the deed to her mother, and the deed

to the Cattons were all recorded on November 5, 1943. The deed from plaintiff and her husband to Alice Lewandowski is the one alleged to have been obtained through constructive fraud, undue influence, misrepresentation, and overreaching.

The sole question submitted to the jury was the special question:

"Was the signature of Agnes L. Caskey to the deed in question * * * procured by undue influence exercised over her by the defendants or any of them?"

All other issues of fact were decided by the court. The jury found that no undue influence was exercised over plaintiff to procure her to sign the disputed deed. The court found that the deed was not obtained by the use of any fraud, undue influence, misrepresentation, or overreaching on the part of defendants or anyone acting in their behalf. These findings must stand unless they are manifestly and palpably against the weight of the evidence.[2] Ordinarily, whether a finding or verdict can be sustained must be determined, not by consideration of the evidence opposed to it, but by considering whether there is any evidence fairly tending to support it.[3]

Although plaintiff claims not to have known that she had any legal interest in the property which she conveyed to her mother and although she claims to have been taken by surprise and pressed into a hasty execution of the disputed deed without having received any consideration for the interest which she conveyed, there is substantial evidence to the contrary, except as to the matter of consideration, and lack of consideration alone does not make the deed void.[4]

---

[2]Ohlson v. Manderfeld, 28 Minn. 390, 10 N. W. 418; Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678; National Pole & Treating Co. v. Gilkey, 182 Minn. 21, 233 N. W. 810; Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164; Ellingson v. Ellingson, 227 Minn. 149, 34 N. W. (2d) 356.

[3]Anderson v. City of St. Cloud, 133 Minn. 467, 158 N. W. 417; Potter v. G. N. Ry. Co. 164 Minn. 213, 204 N. W. 928.

[4]Bowen v. Willard, 203 Minn. 289, 281 N. W. 256.

It appears in evidence that there were delinquent taxes against the disputed property and that plaintiff's mother had discussed with plaintiff and her husband the question of what to do about the taxes. Alice Lewandowski testified that on one occasion, when both plaintiff and her husband were discussing this matter with her, plaintiff's husband said in plaintiff's presence:

"* * * 'It would be better for you to sell the—to sell the house and take some money out what you think you need *and give Agnes the rest,*' * * *." (Italics supplied.)

At the time plaintiff and her husband executed the deed to plaintiff's mother they were mature persons. Plaintiff was over 48 years of age and her husband was over 50. Plaintiff's husband had owned land before and knew what a deed was. One witness testified that plaintiff's husband was reluctant to sign the deed but that he did finally sign it. Plaintiff's mother had frequently talked to plaintiff and her husband about having them take over the disputed property and pay the back taxes. In light of this evidence and particularly in light of the evidence showing the prior negotiation between the parties to this deed, the court was justified in finding that plaintiff and her husband knew the nature and consequences of their act in executing this deed. In fact, it is difficult to believe that plaintiff and her husband were ignorant of the fact that plaintiff had a legal interest in this property. Even to laymen, with limited experience in property matters, it would seem a little strange that they should have to sign any kind of papers in connection with this property unless they had some interest in or connection with it. The very fact that plaintiff and her husband executed this deed tends to impeach their testimony that they were ignorant of plaintiff's rights in the property.

Although there was conflicting evidence as to plaintiff's mental condition and as to the sobriety of her husband at the time this deed

was signed, the evidence was so far conflicting that these matters were clearly for the triers of fact.[5]

There was evidence that plaintiff's mother was a strong-willed matriarch having a tendency to dominate her husband and children, but her dominion appears not to have survived the marriages of her children. Some witnesses testified that plaintiff was particularly prone to stand up to her mother. The jury found that in signing the deed plaintiff was not unduly influenced by defendants or any of them, and we think that finding must stand.

Although plaintiff's mother went to plaintiff's home unannounced and procured the execution of the disputed deed in a matter of 20 minutes, more or less, after her arrival, it was for the trier of fact to determine, in light of all the evidence, whether plaintiff was surprised or unduly hastened. The trier's appraisal of the prior negotiations concerning this property would have a strong bearing on the matter.

■ Having determined that the findings herein discussed are supported by the evidence, the only question remaining is whether plaintiff conveyed anything by the disputed deed. Plaintiff contends that the deed from her father and mother was never delivered to her either actually or constructively and hence that she had nothing to convey when she executed the quitclaim deed to her mother. She further contends that the quitclaim deed which she executed was not effective to transfer after-acquired title, which she claims to have obtained November 29, 1947. Plaintiff's contention that she acquired title as of November 29, 1947, is based on the theory that the recording of the deed November 5, 1943, was a constructive delivery, subject to her acceptance, and that the bringing of this action constituted an acceptance which completed the constructive delivery on that date.

---

[5]Walley v. Sweet, 220 Minn. 545, 20 N. W. (2d) 528; Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176.

Plaintiff's entire contention breaks down at the point where she assumes that there was no constructive delivery and hence that she had nothing to convey as of the date she executed the quitclaim deed to her mother. Ever since the case of Dickson v. Miller, 124 Minn. 346, 145 N. W. 112, it has been the settled law of this state that when a deed is executed and irrevocably delivered to a third person, with instructions to deliver the deed to the grantee on the grantor's death, a present interest passes to the grantee upon delivery to the depositary, although enjoyment of the estate is postponed.[6] Where, as here, the grant imposes no burden upon the grantee, acceptance will be presumed.[7] We therefore must hold that plaintiff had a present interest in the disputed property at the time she executed the deed to her mother and that by that quitclaim deed her interest in the property passed to her mother.

Affirmed.

---

[6]See, also, Shaughnessy v. Shaughnessy, 135 Minn. 262, 160 N. W. 769; In re Estate of Klessig, 153 Minn. 27, 189 N. W. 424; Allen v. Peterson, 192 Minn. 459, 257 N. W. 84; Cloutier v. Charest, 208 Minn. 453, 294 N. W. 457.

[7]Ingersoll v. Odendahl, 136 Minn. 428, 162 N. W. 525.