(No. 13632.—Decree affirmed.)

ANNA B. DEITZ *et al.* Appellees, *vs.* ROMAN DEITZ *et al.* Appellants.

*Opinion filed December 21, 1920.*

1. DEEDS—*delivery is essential to validity and operation of a deed—intention.* Delivery is essential to the operation and validity of a deed, and it must appear by clear evidence that when the deed was delivered the grantor intended he should lose control over it.

2. SAME—*deed takes effect immediately upon delivery—escrow.* A deed must take effect immediately upon delivery or not at all, and where a deed is delivered in escrow, to be kept until the grantor's death, with the intention of the grantor to part with all control over it, the deed takes effect not at the death of the grantor but immediately upon being delivered to the third person, and a subsequent change of the grantor's intention cannot affect the delivery.

3. SAME—*the mere intention that grantee is to have property at the grantor's death does not prove a delivery.* The intention of the grantor that certain persons are to have his property at his death does not prove that a deed purporting to convey such real estate was delivered, but it must be shown by clear evidence that the grantor divested himself of all control over the deed.

4. SAME—*what does not show grantor intended deed to take effect upon delivery to third person.* A deed does not take effect as an escrow merely by being left with a third person for safe keeping in a place to which the grantor has access and frequently comes, even though it remains with the third person until after the grantor's death and is then recorded, and even though the grantor had declared his intention to dispose of his property as provided in the deed and omitted all reference to the property in a will executed when the deed was made.

5. PLEADING—*when heirs are in fact parties although misnamed in bill.* Heirs are, in fact, parties to a bill for partition although their given names are not properly spelled in the bill, where it is obvious from the evidence and the pleadings as finally filed that said heirs and the parties named in the bill are the same persons.

APPEAL from the Circuit Court of Gallatin county; the Hon. JULIUS C. KERN, Judge, presiding.

FOWLER & RUMSEY, and THOMAS H. DAILY, for appellants.

W. S. PHILLIPS, W. R. McKERNON, THOS. H. CREIGHTON, and BARTLEY & BARTLEY, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellee Anna B. Deitz filed a bill in the circuit court of Gallatin county for the partition of certain real estate formerly owned by her deceased husband and an assignment of dower and homestead. Answers were filed by some of the defendants and a cross-bill by certain of them. After the pleadings were settled a hearing was had, and the chancellor entered a decree dismissing the cross-bill and granting partition and assignment of dower and homestead as prayed for in the original bill as amended. From that decree this appeal has been taken.

Henry Deitz for some time before his death in April, 1919, was the owner of about 200 acres of farm land in said county. He had been twice married. His first wife died about ten years previous to his death. About two years after her death he married Anna B. Deitz, an appellee herein. He had some trouble with his second wife and they separated, but they became reconciled and were living together when he died. The record shows that he had nine children by his first wife and none by his second. Eight of his children were still living. On August 2, 1909, after consulting with a neighbor, Walton, who was a notary public and justice of the peace, Deitz executed six deeds conveying portions of his real estate to various children and grandchildren. The property thus conveyed amounted to about 200 acres of farm land and two lots with a homestead in the village of Ridgway, in said county, and certain per-

sonal property. The notary public, Walton, who drafted the deeds, testified that he understood they were delivered to Father Rensman, the Catholic priest at Ridgway, to be kept by him until Deitz's death and thereafter taken to the circuit clerk's office and delivered to the children. Father Rensman testified that these six deeds and other papers were brought to him some two or three years before Deitz's death with the request that he "keep them safe;" that there were no other instructions at that time or later; that he put the deeds and papers in an envelope and placed them in the safe which he had had for years at his place of residence; that several times thereafter Deitz called to examine the papers and took some of the things out, such as bank certificates of deposit and liberty bonds; that the papers were kept in an open envelope, the opening of which was subject to Deitz's order; that witness never examined the papers except when he was asked to take some of them out of the envelope and give them to Deitz; that he never remembered Deitz asking to see the deeds; that Deitz may have taken out a deed and afterward brought it back; that if Deitz had asked for the deeds to be given to him witness would have given them back without question; that he understood from Deitz that they were to be delivered after Deitz's death to the proper public authorities, and that shortly after Deitz's death he took the deeds and left them at the county clerk's office, and it appears they were thereafter recorded. Father Rensman also testified that he did not remember that any such word as "escrow" had been used by Deitz when the deeds were left with him or thereafter; that his conversation with Deitz at the time the deeds were left had been in German, and he did not recollect that any German equivalent to the word "escrow" had been used. At the time Rensman delivered the envelope containing the deeds to a deputy county clerk the evidence shows that it also contained some liberty bonds and a will, which were thereafter delivered to the administrator

of the Deitz estate. The will bequeathed personal property and was dated August 2, 1909, but did not describe or refer to the real estate here in question. H. J. Gahn, a neighbor of the deceased, testified that not long before Deitz's death he had a conversation with him in Rensman's presence, in which he understood Deitz to say that he had left the deeds as to his real estate with Rensman to be "carried out" by him after his death. Rensman testified that he had no recollection of such a conversation.

There is a volume of testimony in the record as to certain statements by Deitz after the deeds were executed, some of which would tend to show that he understood he had left them with Father Rensman to be held in escrow and recorded after his death, and some of which would tend to show the opposite. There was no statement in any of the deeds indicating that Deitz kept a life interest or any other interest in any of the property therein described. There was also evidence as to a conversation with his second wife, an appellee herein, which indicated that he intended her to have a dower interest in all the real estate after his death if she survived him, and other testimony tending to show that he had exercised rights of ownership over all this land up to the time of his death, paying taxes thereon and leasing the same and acting with reference to rights of way for drainage ditches and other matters as if he still owned the property. There is also testimony to the effect that he said in the presence of one of his sons-in-law that he had given certain property on which said son-in-law was then residing to him and his wife, (Deitz's daughter,) to be theirs after his death, and that improvements had been made on various pieces of property by the children residing thereon after the deeds were made. It also appears that Deitz had drafted several wills prior to the execution of these deeds and had torn them up afterwards. It is evident from the testimony that Walton, the notary public, understood that the deeds would be left in

escrow with Father Rensman, to be recorded after Deitz's death; that he had explained to Deitz before drawing these deeds how deeds could be left in escrow, to be handed to the grantees after the grantor's death, and that Deitz could thus keep the income from the farms until he died, but that the title to the land would pass at the time the deeds were executed and delivered to a third person in escrow. Walton testified that Deitz stated to him in a conversation with reference to a reconciliation with his second wife, that he could not get the deeds back as they were not his; that a few weeks before his death Deitz asked witness to promise him that he would see that his children got those deeds after his death.

From the evidence in the record, beyond question, Henry Deitz, when he executed these deeds and delivered them to Father Rensman, intended to make division of his property as he then wished it to be made, he retaining the income and control over the property until his death. The principal question is whether he took such action as would convey his title in the property or whether his acts were testamentary in character and did not convey the title.

Delivery is essential to the operation and validity of a deed. Before such an instrument can become operative it must appear by clear evidence that the grantor intended that he should lose control over it. (*Noble* v. *Tipton,* 219 Ill. 182; *O'Brien* v. *O'Brien,* 285 id. 570.) The question of the delivery of a deed is largely controlled by the intent of the grantor. (*Vaughn* v. *Vaughn,* 272 Ill. 11.) The manual transfer of a deed to the grantee is not necessary to constitute its valid delivery. (*Hoyt* v. *Northup,* 256 Ill. 604.) No particular form or ceremony is necessary to constitute a good delivery. It may be by acts without words or by words without acts, or it may be by both words and acts. It is only necessary that the intention of the grantor be clearly manifest that the deed shall become operative and that he surrenders all control and dominion over it. (*Ger-*

*man-American Bank* v. *Martin,* 277 Ill. 629.) Where a
deed is delivered to a depositary to be kept until the
grantor's death, the effect of its delivery depends upon the
intention of the grantor when the deed was delivered to
the custodian.    Where a deed is delivered in escrow, to
be kept until the grantor's death but with the intention of
the grantor to part with all control over it, a subsequent
change of the grantor's intention cannot affect the delivery
thus completed. (*Hudson* v. *Hudson,* 287 Ill. 286.) Where
a grantor makes a deed and places it in the hands of a
third person, to be delivered to the grantee on the grant-
or's death, and the grantor surrenders all control and domin-
ion over the deed and retains no right to reclaim it, such
act constitutes a complete and valid delivery, and the deed
takes effect, not at the death of the grantor but immediately
upon being delivered to the third person.  (*Bullard* v. *Sued-
meier,* 291 Ill. 400.)   A deed must take effect immediately
or it will not take effect at all.  (*Wilson* v. *Wilson,* 158
Ill. 567.)  The intention of the grantor that certain persons
are to have his property at his death does not prove that
a deed purporting to convey such real estate was delivered,
and it must be shown by clear evidence that the deceased
intended to divest himself of all control of the deed, and
did divest himself of the control, in order to prove deliv-
ery.  (*Pemberton* v. *Kraper,* 289 Ill. 295; *Nofftz* v. *Nofftz,*
290 id. 36.)  Where a deed is merely left with a third per-
son for safe keeping, to be taken care of, and the grantor
has the power of recall, this is not a delivery, though the
deed remain with the third person until after the grantor's
death and is then recorded.  (*Mosier* v. *Osborn,* 284 Ill.
141.)  The fact that the grantor frequently made declara-
tions that he intended to make certain disposition of his
property by deed and failed to make such disposition of his
property in a will made at the same time or after a deed
was in fact made, and afterwards declared that he had
made such deed, does not show that he intended the title

to pass by the deed presently to the grantee during his lifetime. *Lange* v. *Cullinan,* 205 Ill. 365.

Father Rensman's testimony that the deeds were left by Deitz with him to be delivered to the proper authorities after his death does not show clearly that they were intended to be delivered to the grantees by Rensman or that the grantor intended to lose all control over them. It is clear from Rensman's testimony that the grantor always had access to the envelope containing the deeds in Rensman's safe and that Rensman understood they were subject to Deitz's control and would have been given back to him at his request. The evidence is uncontradicted that they were handed personally to Rensman and that the latter placed them in the envelope to be kept in his safe, and that the envelope had no memorandum on it indicating what was to be done with the contents thereafter, and that Deitz had free access to this envelope, which contained the deeds along with certificates of deposit and liberty bonds, any time he desired. It is true there is evidence in the record indicating that at times Deitz said that he had lost all control over the deeds and could not call for them, and it may also be true that Rensman's memory of the transaction was not as clear as it might have been when he was younger. It seems also to be true from the evidence that Rensman was not anxious to keep these papers and wanted to deliver them to others for safe keeping, but we find nothing in the record to indicate that he was not testifying to the best of his recollection as to what took place at the time the deeds were delivered to him, and we see no reason to doubt the accuracy of his testimony. The testimony of the notary, Walton, that he understood the deeds, immediately after they were executed, were left by Deitz with Rensman to be kept in escrow is shown to be a mistake by the testimony of Rensman. The deeds were not left with him until two or three years before Deitz's death, or possibly a little longer. While it may be argued that the testimony is not

in entire harmony as to whether Deitz intended to leave the deeds in escrow, it is quite clear that he did have access to the deeds after he delivered them to Rensman, and that Rensman understood that Deitz still had dominion and control over them. Under the authorities already cited, the conclusion seems necessarily to follow that Deitz did not lose control and dominion over the deeds and therefore they were never delivered, and we cannot hold that they were held in escrow by Rensman, to be delivered to the grantees after Deitz's death. This being so, the deeds were properly held void by the decree of the trial court.

There is some argument also in the briefs as to whether the decree rightly found that the six deeds in question were executed in fraud of the marital rights of the second wife, Anna B. Deitz. In view of the conclusion we have reached that the deeds were never actually delivered it is unnecessary for us to consider or decide that question.

Counsel for appellants further argue that two of the heirs, Amelia Muensterman and Pauline Muensterman, were not properly made parties to these proceedings. It appears from the record that sometimes Amelia was named therein as Mollie Muensterman, and that Pauline Muensterman is sometimes named in the record Paulina and at other times Polly Muensterman. The trial court clearly found that Amelia and Mollie Muensterman were one and the same person; and we think the evidence also shows clearly that Pauline, Paulina and Polly Muensterman were one and the same person, and it was so understood at the time of the trial. The record, in our judgment, shows that both of them were made parties to the proceedings and filed answers therein. This conclusion we think is obvious, not only from the evidence but from the pleadings as finally filed and the decree as entered.

The decree of the circuit court will be affirmed.

*Decree affirmed.*