LEON R. CARTER ET AL., APPELLEES, V. ROME MILLER, APPELLANT.

FILED MAY 1, 1935. No. 29168.

*Hotz & Hotz,* for appellant.

*Gaines, McLaughlin & Gaines, contra.*

Heard before Goss, C. J., Rose, Eberly, Day, Paine and Carter, JJ., and Chase, District Judge.

Eberly, J.

This was an action by Carter and Noyes, copartners, against Rome Miller, to recover damages for failure to perform the covenants and agreements of a lease alleged to have been made by him and covering a certain lot in Omaha, Nebraska. By proper pleading the substantial allegations of plaintiffs' petition were traversed, and the making of the engagements therein alleged were denied. A trial resulted in verdict and judgment for plaintiffs. From the order overruling his motion for a new trial, defendant appeals.

It seems conceded by the parties that no formal written lease was ever delivered by defendant to plaintiffs. The issues as made by the pleadings, as well as the facts developed by the evidence, imposed on plaintiffs the burden of establishing a binding express contract.

"To establish an express contract there must be shown what amounts to a definite proposal and an unconditional and absolute acceptance thereof." *Melick v. Kelley,* 53 Neb. 509.

"That a binding contract may result from an offer and acceptance, it is essential that the minds of the parties meet at every point, and that nothing be left open for future arrangement." *Krum v. Chamberlain,* 57 Neb. 220. See, also, *Olmsted v. Caldwell,* 110 Neb. 18; *Cooper v. Kostick,* 112 Neb. 816; *O'Shea & Son v. Leavitt,* 125 Neb. 12.

Rome Miller is the alleged maker of the lease in suit, and the fundamental question to be determined by the evidence is whether or not it establishes a definite propos-

al related to the subject-matter of the action to or by him, and an unconditional and absolute acceptance thereof by the party to whom the same is made.

In this connection, it appears without substantial dispute in the evidence that the lot in question had been leased by Rome Miller to the Easy Parking Company, a corporation, in 1927; but that this corporation was still in possession thereunder as tenant holding over during the period covered by the events which form the source of the present litigation. In 1930 Miller had a conference with William J. Hotz, an attorney, and at least tacitly authorized the latter to recover possession thereof for him. In January, 1931, the plaintiffs in this action applied to George & Company, a real estate firm of Omaha, Nebraska, who were not then the agents of defendant, Miller, and in fact at that time had no relations whatever with him, to secure a lease of the lot here in controversy. Miller was then in Los Angeles, California. On January 26, 1931, George & Company wrote a letter to Miller at that place and submitted an offer of $100 a month rental for the lot in suit, for the period of one year, on behalf of Noyes and Carter. The evidence is that this letter was never answered by Miller, but was consigned to the waste-paper basket by the recipient. On February 6, 1931, receiving no answer to their communication of January 26, George & Company again addressed a letter to Miller, repeating their previous offer. Some time after this was done, plaintiffs' witness, Huston, who was then in the employ of George & Company, testifies that he was orally communicated with by William J. Hotz, who was defendant's attorney, and Hotz instructed him to go ahead and draw a lease "according to the terms that we had submitted to Mr. Miller." Further, "that the deal could be worked out with these gentlemen (plaintiffs)." Accordingly about February 12, 1931, he (the representative of George & Company) drew a lease in duplicate for the lot in suit, had the same executed and acknowledged by plaintiffs, and secured from them the payment of $200 in cash. There is

a conflict in the evidence as to whether the lease, in duplicate, was delivered to Hotz and by him forwarded to Miller in California, or whether this instrument was mailed to Miller direct by George & Company. At all events, Miller made no reply to George & Company concerning this last communication or the proposed leases inclosed to him. The money collected by George & Company was never forwarded to Miller, nor paid to any one in his behalf.

Miller testifies, by deposition taken in California, in part, substantially as follows: That he had discussed the matter of the occupancy of the lot in question by the Easy Parking Company with his attorney, William J. Hotz, of Omaha, Nebraska, while in Omaha during the summer of 1930; that his instructions to Hotz at that time were not in writing; that he had never entered into a contract, either oral or in writing, with George & Company as to the leasing of lot 8, block 169, original city of Omaha, Nebraska (the lot in suit); that he received two letters from George & Company; that the letter of January 26, 1931, was consigned to the waste-paper basket on reading, and was never replied to; that the letter of February 6, 1931, from George & Company was received, but he never in any manner communicated to the writers thereof with reference thereto; that he never authorized George & Company to execute a lease for him or in his behalf to William E. Noyes and Leon R. Carter for the property in question; that he received no payment whatever on the proposed lease, nor did he authorize any one in his behalf "to accept money upon this property for a lease from Noyes or Carter;" that he received a lease made out to Noyes and Carter which he signed and acknowledged on February 16, 1931, and forwarded to his attorney; that he never authorized his attorney, William J. Hotz, to make delivery of this lease to plaintiffs in this action; and in explanation of this fact, he further testified:

"Q. Why was he not so authorized? A. For the rea-

son that I had a tenant on the property then, the Easy Parking Company, and there were some negotiations pending with the Easy Parking Company at the time as to whether they would continue in possession of the property and I sent this executed lease to my attorney to be used by him in the event the negotiations with the Easy Parking Company were concluded by the Easy Parking Company giving up their tenancy and vacating the property. * * * Q. Did you ever give any one any written authority or verbal authority to lease this property in question to Carter & Noyes? A. No; I did not; I merely signed a lease that had been made up by George & Company and sent the lease to Mr. Hotz *for the purpose of looking into the matter.* Q. At that time, did you know anything of the condition of affairs with the tenant that was on the property? A. I did not."

Miller also testified that no rent was ever tendered him by George & Company or any one else in behalf of plaintiffs, and that he never replied to George & Company's communications.

William J. Hotz corroborates the testimony as to lack of authority conferred upon him by Miller in this transaction to complete the lease sent him or deliver the same to the plaintiffs. The undisputed competent evidence in the record shows that Miller forwarded the duplicate leases to Attorney Hotz "to look into." It will be remembered that in this case Miller is admittedly the source of all authority, and rights claimed must be traced to him. Any unauthorized acts and statements of Hotz, even if such there were, would be in no manner binding upon Miller.

In view of Miller's conceded absence from the scene of this transaction, the controlling principle is: "A person is not as a rule bound by the contracts of one who assumes without authority to represent him as agent, nor by contracts made by his agent beyond the scope of his actual or apparent authority, nor by acts done in connection therewith without authority or in excess of authority." 2 C. J. 834.

So, also, "Evidence that one is acting for another is not sufficient to prove authority so to act." 10 Ency. of Evidence, 31. See, also, *Walsh v. St. Paul Trust Co.*, 39 Minn. 23.

Likewise, agency cannot be proved as against others than the alleged agent, by his declaration not brought home to the principal. 10 Ency. of Evidence, 15; *Burke v. Frye*, 44 Neb. 223; *Richardson & Boynton Co. v. School District*, 45 Neb. 777; *Anheuser-Busch Brewing Ass'n v. Murray*, 47 Neb. 627; *Blanke Tea & Coffee Co. v. Rees Printing Co.*, 70 Neb. 510.

To authorize a recovery in the instant case, plaintiffs must establish by a preponderance of the evidence, not only an actual offer to Miller, but also an actual, unconditional acceptance of the terms of the proposed lease by Miller, or his agent, thereunto duly authorized.

"Words or conduct amount to an acceptance only if they show that the offeree means to accept the offer. * * * Silence does not amount to assent; and cross-offers do not constitute a contract." 1 Page, Contracts, 224, sec. 151.

Indeed, a statement by a principal to his agent showing his intention to accept an offer made by a third person, but not authorizing the agent to communicate such acceptance to such third person, is not an acceptance. *Keene v. Lowenthal*, 83 Miss. 204.

The form in which the offer was submitted by George & Company in no way affects or modifies the controlling principles involved in the transaction. It must be deemed merely an offer made by mail. The fact that an unaccepted offer purports to be a contract does not change its legal effect, or make it a binding obligation before acceptance. *Holmes v. Bloch*, 196 Ala. 322; *Nolin Milling Co. v. White Grocery Co.*, 168 Ky. 417; *Deering & Co. v. Mortell*, 21 S. Dak. 159.

As indicating the extent of the scope of authorities on this subject, though not necessarily strictly applicable to the instant case, it appears to be the rule that if an offer is made by mail, and the offeree mails instructions to his

own agent to accept such offer, the contract takes effect when such agent notifies the offerer of such acceptance, and not when the offeree gives such instructions to his agent. *New v. Germania Fire Ins. Co.*, 171 Ind. 33; *Busher v. New York Life Ins. Co.*, 72 N. H. 551.

The fact that Hotz was the attorney for defendant in no manner implies a right on the part of the attorney at law to bind his client in the manner and to the extent claimed by the plaintiffs in the instant case. In addition, the undisputed evidence is that the lease signed by the defendant was forwarded to Hotz simply for his investigation, "to look into," which is tantamount to an express limitation on the powers of Hotz. See *Raridan v. Bick*, 259 Mich. 200; *McLain v. Nurnberg*, 16 N. Dak. 144; *Commercial Credit Co. v. Crone*, 270 S. W. (Tex. Civ. App.) 209; *Falkenstein v. Gibson*, 108 N. J. Eq. 251; *Stiritz v. Big Muddy Mining Co.*, 257 Ill. 543; *Gorsuch v. Rutledge*, 70 Md. 272; *Harnett v. Korscherak*, 110 N. Y. Supp. 986; *Smith v. Moore*, 149 N. Car. 185.

The undisputed proof in the record is that Miller never accepted the proffered lease; that Hotz as agent had no authority so to do; and that acceptance thereof was not communicated to the plaintiffs by any one.

Thus, the evidence in the record clearly establishing affirmatively that the so-called contract for lease, or lease, in suit, was never legally entered into or authorized by the defendant, there is insufficient proof to support the judgment and findings of the trial court. Further, the district court erred in overruling defendant's motion, at the close of all evidence, for a directed verdict in defendant's behalf.

The judgment of the trial court is, therefore, reversed and the cause dismissed at the cost of plaintiffs.

REVERSED AND DISMISSED.