ROBERT A. HAYNE, appellee, v. EDMOND M. COOK, trustee for Ann Shuler Chase, and HAROLD L. HANSEN, appellants.

No. 50275.

(Reported in 109 N.W.2d 188)

MAY 2, 1961.

REHEARING DENIED JUNE 13, 1961.

Duncan, Jones, Hughes, Riley & Davis, of Des Moines, for appellant Edmond M. Cook, trustee for Ann Shuler Chase; and Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for appellant Harold L. Hansen.

Herrick & Langdon, of Des Moines, for appellee.

LARSON, J.—Plaintiff, in seven counts, brought this suit in equity for specific performance of an alleged contract for the sale of residentially-improved real estate in Des Moines, Iowa. Defendant Cook and his agent and attorney, Blair, of Davenport, Iowa, who we shall refer to herein as the "trustee", held the legal title to the real estate. Defendant Hansen was made a party because of an alleged subsequent contract with the trustee for the purchase of the real estate.

Defendants both denied the existence of any contract with

the plaintiff, counterclaimed for a decree quieting their title as against the claims of plaintiff, and each asked damages for slander of title.

The trial court determined both issues adversely to defendants, and they appealed.

As stated in defendants' joint brief and argument, the issues before us are (1) whether there was any specifically enforceable obligation by which the trustee was required to convey to plaintiff, and (2) whether the claims of plaintiff to the real estate were barred by the subsequent contract of defendant Hansen who claimed to be a bona fide purchaser without notice. We shall deal with them in that order.

The general rules of contract law applicable to this case are not new or difficult, and for the most part are not in dispute. However, the surrounding facts and circumstances which so often determine the issues in such matters are in dispute and are somewhat more complicated than usual. We may even say they bring to mind the warnings that "too many cooks spoil the broth" and that "the longest way around is often the shortest way home." However, the following facts are either undisputed or, under satisfactory evidence, were factually determined by the trial court.

Defendant Cook, as trustee under a trust created by John Shuler for the benefit of his daughter, Ann Shuler Chase, owns the legal title to the involved property. Blair, his attorney and agent, acted for him in this matter. Ann and her husband, Mabis Chase, prior to their divorce, occupied the real estate under the terms of the trust. By stipulation between Ann and Mabis in connection with their divorce, the property was to be sold by the trustee and the net proceeds were to be divided between them. The stipulation further provided that, should the trustee determine to accept an offer for less than $50,000, he would notify Mabis of that intention and Mabis would have three days to purchase the property for that amount and an additional seven days to pay the entire amount to the trustee. Although not a party to that stipulation, the trustee was advised of its terms and honored it. Ann, acting for and with the approval of the trustee, listed this property for sale with

Murray Work & Company, a licensed real-estate broker in Des Moines. Their salesman Albert H. Iverson was active in obtaining an offer to buy from the plaintiff. However, the first offer considered by the trustee was brought in by an independent real-estate salesman, Sumner Macomber. Under date of April 29, 1960, Hansen, defendant herein, signed an offer for $47,000 which Macomber left with Shuler. Shuler advised the trustee of the offer by phone, and the trustee immediately wrote a letter to Mabis and his attorney, Wendell B. Gibson, advising them of his intention to accept the offer and of the time limit for Mabis to exercise his option to purchase the property at that figure.

On April 30 Iverson obtained an offer of $48,000 from the plaintiff, but this offer addressed to the trustee was not sent to him because plaintiff himself decided to make a larger offer to Mabis of $49,000, with the hope that Mabis would exercise his option and then sell to plaintiff. This offer was made through Iverson on May 2, 1960. Iverson had told Mabis and his attorney, Gibson, on Sunday, May 1, of the plaintiff's $48,000 offer. On May 2 a letter of acceptance on behalf of Mabis was prepared to buy the property from the trustee at $47,000. It disclosed that an offer had been made to Mabis of $49,000 and noted that two real-estate commissions would be due for these sales. This letter was not mailed, for it appears that Gibson, Mabis and his mother decided they would prefer to have plaintiff's $49,000 offer submitted direct to the trustee, thereby avoiding two transfers, and would allow Ann to share in the increased receipt from the real estate. It was apparent that, to accomplish this short cut, some changes had to be made with the approval of the offerer and of the trustee. Mabis' option expired May 2, and in an effort to obtain the trustee's immediate approval Gibson took plaintiff's offer and the required $5000 check payable to Murray Work & Company to Shuler's office. After talking the matter over with Shuler, Gibson conferred with Iverson and they changed the offer so as to make the trustee the offeree and inserted some suggested clauses relative to patio, cushions and interior damages to be repaired by insurance carriers. Pursuant to these changes, Gibson and Shuler talked to the trustee

by telephone. Gibson suggested, in view of the circumstances, including the fact that the plaintiff's offer expired May 2, that the trustee authorize someone in Des Moines to accept on his behalf the plaintiff's offer as altered. Blair refused that request, stating that the written offer would have to be sent to him at Davenport for inspection and approval. The trustee did say the amount offered and the terms recited to him by Shuler were satisfactory and acceptable, and agreed that "if the instrument was satisfactory I would sign it and send it back to Mr. Shuler." Feeling the deal was closed, Gibson then sought Iverson's approval to change the date of expiration and, being assured it was all right, did change it to expire May 5. The offer was then left with Shuler to send to the trustee at Davenport. Iverson saw the plaintiff that afternoon and obtained his approval of the changes in the written offer. Upon being advised that this offer was being accepted and that under the contract another $5000 was due, a second check was made to the Murray Work & Company and delivered to them on the third day of May, 1960. This offer (Exhibit "1") dated April 30, 1960, provided for a $5000 payment with the offer, a $5000 payment upon acceptance of the offer, and the balance of $39,000 upon delivery of warranty deed.

Blair received the written offer May 3 and, after talking to Shuler on the telephone, wherein they discussed the custody of the down payments provided and plaintiff's financial ability to carry out the contract, the contracts were signed by the trustee without modification and mailed back to Shuler. In the same envelope Blair placed the abstracts of title, insurance policy and a personal letter (Exhibit "7") to Shuler. Late that night Macomber solicited a new offer from defendant Hansen, who had been told of the plaintiff's negotiations for the property through Mabis and the arrangement to handle the deal direct with the trustee. Macomber called Shuler, who in turn called Blair to determine whether the trustee could still accept a new offer. It was Blair's opinion that he could, and he then told Shuler not to open the letter containing the signed agreement when it arrived, that he would come to Des Moines and negotiate the sale with Hansen himself the next day. This was done. The trustee

"retrieved" the letter from Shuler's desk, signed the agreement of sale with defendant Hansen and accepted his checks for the full payment therefor. No effort was made to advise plaintiff or Mabis or Murray Work & Company of this transaction, and when plaintiff learned of it he procured and filed an affidavit of P. M. Work to the effect that Dr. Robert A. Hayne, by due offer and acceptance, purchased the property under dispute for $49,000. This suit followed, and a few days prior to the trial the trustee delivered a deed to the property to Hansen, but it was not recorded.

Although defendant Hansen has no present interest in the real estate, as he has by quitclaim deed conveyed his interest to the trustee and the trustee has paid him for work done upon the premises prior to the decision below, he maintains he has retained his right of action for slander of title and that his counterclaim to that extent is not moot.

The trial court, who had before it the witnesses and heard the testimony and observed their demeanor on the stand, came to the conclusion that the equities were with the plaintiff, that the interested parties intended to and did accept his offer of $49,000, and that in return for the extra $2000 above the original $47,000 offer, the trustee agreed on May 2 to transfer the title direct to plaintiff, and that no acceptance of the written offer was necessary. It further concluded that defendant Hansen had knowledge of sufficient facts to put him on inquiry as to plaintiff's rights, and cannot be regarded as a good faith purchaser for value without notice. It decreed specific performance of plaintiff's contract and denied defendants any relief upon their counterclaims. We agree with the result and the conclusion as to defendants' counterclaims. We do, however, agree with defendants' contention that this case, reduced to its simplest elements, can and should be resolved on the basic principles of contract law. We decide it on that basis.

 I. Being in equity, this suit is triable de novo, and while we are not bound by the trial court's findings or conclusions, serious consideration and weight are given those findings, especially where a question as to the credibility of the testimony is concerned. Hadsall v. West, 246 Iowa 606, 620, 67 N.W.2d

516; Keplinger v. Barer, 234 Iowa 1135, 15 N.W.2d 284; In re Estate of Brooks, 229 Iowa 485, 492, 294 N.W. 735. It is also true that if the judgment of the district court in such a case can be sustained on any theory presented by the pleadings, and upon which there is substantial evidence, the judgment may be affirmed regardless of whether the theory adopted by the trial court is considered correct. Merkel v. Merkel, 247 Iowa 495, 498, 73 N.W.2d 75, 76; Stover v. Central Broadcasting Co., 247 Iowa 1325, 1330, 78 N.W.2d 1, and citations; Brown v. Brown, 232 Iowa 1265, 8 N.W.2d 414.

II. In order to obtain a decree of specific performance of the agreement, it was, of course, necessary for plaintiff to prove by clear, satisfactory and convincing evidence that he had made a definite, certain and complete offer to the trustee which was accepted. Marti v. Ludeking, 193 Iowa 500, 185 N.W. 476; Brandt v. Schucha, 250 Iowa 679, 96 N.W.2d 179; Hunter Investment, Inc., v. Divine Engineering, Inc., 248 Iowa 1109, 1120, 1121, 83 N.W.2d 921, 927. Plaintiff contends and defendants deny there was such an oral offer and acceptance, but there is no question as to the definiteness of the written offer and the execution of the acceptance by the trustee. Neither is there any question in our minds but what the parties contemplated a formal written contract before it became effective. The rule is well settled in Iowa that where the terms of a contract are not fully and definitely settled in preliminary negotiations, and a written and formal contract embodying the complete contract is contemplated, no valid and enforceable contract exists until the execution of the written instrument. Hunter Investment, Inc., v. Divine Engineering, Inc., supra; Annotations 101 A. L. R. 923, 950, 122 A. L. R. 1217, 1252, 1254; Brandt v. Schucha, supra, 250 Iowa 679, 691, 96 N.W.2d 179, 186; Snater v. Walters, 250 Iowa 1189, 1197, 98 N.W.2d 302. We are satisfied such a written offer was made by the plaintiff, that it was received and, after careful study and consultation with others, the instrument was executed by the trustee without change on May 3, 1960. There is no question but what the trustee intended to accept the offer as submitted when he signed it.

The real nub of this controversy then appears to be whether

the acceptance was "delivered" to plaintiff in the legal sense of the word. Was there a legal delivery which could not be nullified by Blair's act of retrieving the letter in Shuler's office on the 4th of May? Before discussing "delivery" in the next division hereof, there are a few other facts which should be established. We agree with the trial court that the listing of this property with Murray Work & Company was authorized and approved, that the written offer submitted to the trustee on May 2 of $49,000, although changed twice, was ratified and approved by plaintiff prior to being mailed to the trustee, that the method chosen by plaintiff to submit the offer to the trustee in Davenport was by way of the real-estate broker, Mr. Shuler, and the United States mail, and that it was signed and returned by the same channel. Our search then is for satisfactory and convincing evidence of the trustee's intent, actual or constructive, when the instruments were placed in the mail on May 3, 1960. Volumes have been written on what constitutes the intent of an acceptor, but none has been found which involves all the facets found in this case. It is hard to conceive of more complications.

▮ It is true, as defendants contend, that in order to become contractually bound, the parties must manifest a mutual, unequivocal assent to the terms of the contract, which is ordinarily communicated by an offer and acceptance. Williston on Contracts, Revised Edition, Volume I, sections 24, 28, 71, 72; Cedar Rapids Lumber Co. v. Fisher, 129 Iowa 332, 105 N.W. 595, 4 L. R. A., N. S., 177; Alexandria Billiard Co. v. Miloslowsky, 167 Iowa 395, 149 N.W. 504; Marti v. Ludeking, supra, 193 Iowa 500, 185 N.W. 476; Brandt v. Schucha, supra, 250 Iowa 679, 96 N.W.2d 179; Carter v. Miller, 1935, 128 Neb. 853, 260 N.W. 393; New v. Germania Fire Ins. Co., 1908, 171 Ind. 33, 85 N.E. 703, 131 Am. St. Rep. 245; Busher v. New York Life Ins. Co., 1904, 72 N. H. 551, 58 A. 41. The problem before us is whether such manifestation appears to establish as a fact that plaintiff's offer was accepted on May 2 or 3 prior to defendant Hansen's offer on the 4th of May. Regardless of whether we conclude the executed instruments were received by Shuler or not, we think there had been such a manifestation of acceptance, and that

under the facts disclosed, plaintiff's equitable title to the premises was sufficiently established to justify this suit for specific performance against the trustee. Blair does not deny that he did send the signed instruments back to the offerer by the same channel that they were sent to him.

III. Perhaps an abstract statement as to the law relating to "delivery" should be made. Delivery is a matter of intent. Such intent may be actual or constructive. As used herein, it actually refers to the communication or notification of an acceptance to the offerer. Ordinarily it is essential to the operation and validity of a deed or a written contract, but, like most courts, we have held that neither manual transfer of the instrument nor any particular form of ceremony is necessary to constitute good delivery. It may be by acts without words, or words without acts, or by both words and acts, it being necessary merely that the grantor or promisor intends actually or constructively that the instrument shall become operative and take effect as a valid obligation. Perhaps Dean v. Sargent, 234 Iowa 176, 185, 12 N.W.2d 249, and citations, is the leading Iowa case in this field, but there are many others. Also see 12 Am. Jur., Contracts, section 63, page 553. Of course a conditional acceptance is not an acceptance at all, but is merely a counteroffer, and the contract would not be binding until the new offer had been received and acted upon by the original offerer. While it is perhaps true that a "delivery" or notification of acceptance can be delayed under certain conditions where the acceptor has retained control or the right of recall, the written contract then would not be valid until there was an authorized delivery of the acceptance. In this class of cases are those where an insurance policy has been sent to an agent with directions to collect the premium from the applicant before delivering the policy. Busher v. New York Life Ins. Co., supra, 72 N. H. 551, 58 A. 41; New v. Germania Fire Ins. Co., supra, 171 Ind. 33, 85 N.E. 703, 131 Am. St. Rep. 245; 29 Am. Jur., Insurance, section 220, page 607, and citations thereunder. They are not applicable here.

IV. Defendant Blair took the position, after the late call from Shuler May 3, that he did not intend an unconditional delivery of the acceptance when he mailed the instrument to

Shuler that afternoon. His right of control and recall, he asserts, had not been lost. Shuler, he argues, was his agent, and that delivery to plaintiff was on condition that the down-payment checks be first obtained and sent to Blair. Plaintiff, on the other hand, was unaware of any such demand, and it appears the checks had been delivered to the broker as was required by the contract. Blair must have had some serious doubts as to the relevancy of such a condition, for in the telephone conversation with Shuler he said he specifically instructed Shuler not to open the envelope when it arrived at his office the next day. Under these conditions we think the minds of the parties had met when Blair signed and mailed the agreement back to Shuler, and that the request to Shuler did not amount to a contract condition.

We are certain Blair considered the deal closed when he mailed the acceptance to Shuler. He had found nothing in the written agreement that he wanted changed and, after discussing the agreement with Shuler by telephone on May 3, affixed his signature thereto. The agreement in paragraph 12 provided that "funds of the purchase price may be used to pay taxes and other liens to comply with the above requirements, *same to be handled under supervision of Murray Work & Co., agent, * * *.*" (Emphasis supplied.) It is not disputed that both $5000 checks were in the possession of Murray Work & Company, Blair's agent, when the trustee executed and mailed the acceptance. Any dispute between the trustee and his agents, Shuler and Murray Work & Company, as to who should have the actual custody of the two required down-payment checks, would have no bearing on plaintiff's rights or obligations. These funds were beyond plaintiff's control until May 5 or a rejection by the trustee prior thereto.

On the other hand, we think it is indicative that the trustee requested immediate possession of the down payment, that he enclosed the abstracts and the insurance policy on this property, that he asked that the abstracts "be continued and delivered to the attorney for the purchaser for examination", and that he requested, "Will you please have a deed prepared as soon as possible for the signature of Edmond M. Cook, Trustee * * * so that his signature can be obtained." This letter further stated,

"I am returning herewith the three copies of the sale agreement in connection with the proposed sale of the property * * * to Robert A. Hayne for the sum of $49,000. This contract calls for the payment of $5000 with the offer, and another $5000 upon the *acceptance* of the offer. Neither of these amounts have been received, and you should receive *two* checks for $5000 each upon delivery of the contract and send them to me for delivery to the trustee." (Emphasis supplied.)

In view of a related telephone conversation between Mr. Work and Blair on May 3 concerning the custody of these down payments in Work's hands, we must assume that when Shuler delivered the signed agreement to Murray Work & Company he was to get the checks from Work and send them to Blair, nothing more. In such statements of Blair we find established a clear expression of mutuality of obligation and actual acceptance of the offer. The trustee, feeling himself bound, wanted immediate possession of the down-payment checks.

This is the law relating to contracts in most jurisdictions. See Cloutier v. Charest, 208 Minn. 453, 294 N.W. 457, 458; Hill v. Donnelly, 56 Cal. App.2d 387, 132 P.2d 867, 870; Ballard v. Ballard, 230 N. C. 629, 55 S.E.2d 316, 319; Black v. Sharkey, 104 Cal. 279, 37 P. 939; Merkle v. Merkle, 85 Cal. App. 87, 258 P. 969, 978; Gloucester Mutual Fishing Ins. Co. v. Hall, 210 Mass. 332, 96 N.E. 679, 680, Ann Cas. 1912D 348; Busher v. New York Life Ins. Co., supra, 72 N. H. 551, 58 A. 41; Kelsa v. Graves, 64 Kan. 777, 68 P. 607; Painter v. Brainard-Cedar Realty Co., 29 Ohio App. 123, 163 N.E. 57. Also see Carter v. Miller, supra, 128 Neb. 853, 260 N.W. 393.

It was held in Deitz v. Deitz, 295 Ill. 552, 129 N.E. 508, that "delivery" requires only that the grantor intends that the deed should become operative and that he surrenders all control and dominion; that a change of intention once it is delivered to a third person cannot affect delivery. In Cumnock-Reed Co. v. Lewis, 278 Ky. 496, 128 S.W.2d 926, the Kentucky Supreme Court held "legal delivery" means that a contract is then intended to take effect as a valid obligation. A contract which has been delivered in the legal sense, it said, cannot be contradicted or varied by parol evidence.

The insurance cases cited by defendants we do not find applicable. In each of those cases it was clearly agreed and contemplated between the parties to the contract that the company's agent would collect the premium before the delivery of the policy became effective. Nertney v. National Fire Ins. Co., 199 Iowa 1358, 203 N.W. 826; 29 Am. Jur., Insurance, sections 216–220 inclusive, pages 605–607.

V. Plaintiff contends under this record there was also a valid and binding constructive acceptance of his offer. He argues plaintiff had knowingly and intentionally used or authorized the use of the real-estate agent, Iverson, Shuler and the United States mail in carrying on these negotiations. The offer was signed by Hayne, delivered to Iverson, who delivered it to Shuler for his consideration and for mailing to the trustee. He further contends Blair sent his executed acceptance back to Shuler for delivery to Iverson and thence to Hayne. Thus, plaintiff says Blair accepted plaintiff's implied authorization to use the same channel in communicating his acceptance of the offer as was used by plaintiff in sending the offer, and that by doing so the contract became complete when it was placed in the mail for the return trip.

The law seems to be well settled that when an offer is made through a particular channel or agency, the offerer impliedly authorizes its acceptance through the same channel. Lucas v. Western Union Tel. Co., 131 Iowa 669, 673, 109 N.W. 191, 6 L. R. A., N. S., 1016; Nertney v. National Fire Ins. Co., supra, 199 Iowa 1358, 1365, 203 N.W. 826; Restatement of Contracts, chapter 3, Topic 2, sections 64, 66; Williston on Contracts, Revised Edition, Volume 1, section 24.

In such cases the contract is complete when the signed agreement or the communication is started on its return trip to the offerer. The ground upon which this rule is based is that when the offerer selects a common agency through which to conduct negotiations, a delivery to it or him of the acceptance is a communication of the acceptance to the offerer and completes the contract. After such delivery, the acceptor has no right to recoup the instrument or withdraw the acceptance

1026

and, of course, cannot recall it from the channel once placed therein.

It is stated in Lucas v. Western Union Tel. Co., supra, 131 Iowa 669, at 673, 109 N.W. 191, 193, 6 L. R. A., N. S., 1016: "A written letter or telegram, like an oral acceptance, must be communicated to the party who has made the offer or *to someone expressly or impliedly authorized to receive it,* and this rule is not complied with by delivering it to the writer's own agent or messenger even with direction to deliver to the offerer." (Emphasis supplied.) It would seem, therefore, if that selected agency was in fact an agent of the acceptor, he still could not control or recall the acceptance once communicated by that designated agent. Dean v. Sargent, supra, 234 Iowa 176, 185, 12 N.W.2d 249.

▪▪▪ On the other hand, if the offeree does not use the same agency, agent or channel, in his acceptance, the acceptance is not effective until actually received by the offerer, unless of course that manner was specifically designated by the offerer. In the Lucas case the offer was sent by mail and the acceptance was made by telegraph. We held that since such a method of acceptance was not actually or impliedly authorized, it did not become effective until the communication was received by offerer. There, offeree's choice of a different channel left the control of the acceptance in offeree until it was actually delivered.

In the Restatement of Contracts, chapter 3, Topic 2, section 64, it is stated: "An acceptance may be transmitted by any means which the offeror has authorized the offeree to use and, if so transmitted, is operative and completes the contract as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror, unless the offer otherwise provides." As an illustration of this rule, it states: "A makes B an offer by mail, or messenger, and B promptly sends an acceptance by his own servant or agent. There is no contract until the acceptance is delivered * * * to the offeror, or to some person authorized to receive it on his behalf."

In Williston on Contracts, Revised Edition, Volume I, section 24, it is stated: "The law * * * has enlarged this con-

ception of a promise, by giving the same effect in some cases to messages started on their way to the promisee as to those which actually reach him." And in section 81 it states: "It was early decided that the contract was completed upon the mailing of the acceptance. The reason influencing the court was evidently that when the acceptance was mailed, there had been an overt manifestation of assent to the proposal."

See Nertney v. National Fire Ins. Co., supra, 199 Iowa 1358, 1365, 203 N.W. 826, 829, where we recognized this rule and said: "The general rule with respect to the acceptance of an offer by mail is that, where one person makes an offer, and requires or authorizes, either expressly or impliedly, the acceptance to be sent by mail, the acceptance is communicated, and the contract is complete, from the moment the letter accepting the offer is mailed."

Had Blair used another channel to return the signed agreement, such as by messenger, or even by a different agent, it would appear he could have stopped the acceptance any time before it was delivered. This he did not do. He returned his acceptance by the same channel through which the offer was sent to him. This would appear to require a holding that a valid communication of that acceptance occurred when it was started on the return trip.

In view of such holding, it would seem immaterial whether Shuler opened his mail on May 4, but it is clear he did receive that mail. Any statement, request or condition addressed to Shuler in his capacity as common agent, adviser, or intermediary, at that late hour would not affect the acceptance. While it may be true, as the trustee contends, that without the other circumstance a delivery of the instrument to Shuler, as Blair's agent, for delivery to the plaintiff could be recalled before he made the actual delivery, yet if that agent was also the designated agent of the offerer, such a delivery could not be recalled. Dean v. Sargent, supra, and citations; Carr v. Howell, 154 Cal. 372, 97 P. 885, 889; Huse v. Reed, 157 Md. 504, 510, 146 A. 579, 581.

If we accept Shuler then as a common agent, there is no conflict with the statement in Lucas v. Western Union

1028

Tel. Co., supra, that a delivery to the offeree's own agent by mail is not a good delivery as to the offerer. The delivery must, of course, be made to a person designated to receive the acceptance.

We find merit in the contention that Shuler was to a certain extent the agent of the trustee, and that he was also the designee of plaintiff to receive the acceptance. There is substantial evidence that he was one of the common agencies or agents through which these parties had conducted negotiations.

No other conclusion would be just and equitable under these circumstances, the trial court held, and we must agree. Besides all this, the trustee was learned in the law and surely would have used another method of communication of his acceptance had he wished to withhold the time of acceptance until it was received by Hayne. That he did not desire this result and felt that by choosing the same channel for the communication of his acceptance the contract would be complete and performance enforceable, we do not doubt.

VI. It is apparent, we think, that regardless of the effect of the mailing of the acceptance to Shuler, or the manner it was sent to him, Blair made Shuler the custodian of the contract for the benefit of Hayne. This he could do. In Dean v. Sargent, supra, 234 Iowa 176, 184, 12 N.W.2d 249, 252, we considered a like situation in Carr v. Howell, 154 Cal. 372, 381, 97 P. 885, 889, and quoted with approval this statement of the court: "Although Clark was Mrs. Dwyer's own agent, she could, nevertheless, make him the custodian of the contract for the benefit of Carr, and if she did so and delivered the contract to Clark for Carr, as the evidence tended to show and as the court manifestly believed she did, it was a sufficient delivery to complete its execution as a subsisting contract."

We think this principle applies here, for Blair not only delivered the signed acceptances to Shuler, but sent him the abstracts of title and directed him to prepare a deed for Hayne. At any rate, we think the evidence satisfactorily establishes that Blair made Shuler the custodian for Hayne, that the contract

was so delivered to Shuler, and that this was a sufficient delivery to complete its execution as a subsisting contract.

VII. The second assignment seems to have less merit than the first, for it is hard to believe defendant Hansen was not aware of the situation that actually existed at the time. The rule is well established that to be a good faith purchaser for value, one must show he made the purchase before he had notice of the claim of another, express or implied. It is his burden. Young v. Hamilton, 213 Iowa 1163, 1173, 240 N.W. 705, 706. In the only case cited by defendant Hansen (Walker v. Cameron, 78 Iowa 315, 318, 43 N.W. 199), the court found it was not shown that defendant "had any knowledge of negotiations between plaintiff and the Camerons" before he bought and paid for the land. This is not the case before us. The agent Macomber was well aware of the deal by which Mabis was not exercising his option as contemplated, but was allowing the transaction to go through the trustee alone. It appeared that under an arrangement Macomber was to share in the Hayne real-estate commission. He had advised Hansen of the dates involved and they had talked over this last-minute offer, with a desire to head off the acceptance of plaintiff's offer. Thus Hansen was in doubt as to plaintiff's status and said he specifically asked Macomber if the deal with plaintiff had been closed. Macomber, being in doubt, called Shuler, and Shuler called the trustee to obtain his answer. It is clear that even then Hansen was not sure and asked them again when they were all together in Shuler's office on May 4. Although duly alerted, Hansen did nothing further to clarify the matter. He did not call Murray Work & Company, Iverson, Mabis Chase, the plaintiff, or anyone not interested in the new offer he was making, but was content to accept the expressed opinion of those present that the deal with the plaintiff had not been closed. He was well aware of present negotiations with plaintiff.

It is a general rule announced in 66 C. J. S., Notice, section 11, pages 642, 643, 644, "that whatever puts a person on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and

understanding. A person who has sufficient information to lead him to a fact is deemed conversant with it, and a person who has notice of facts which would cause a reasonably prudent person to inquire as to further facts is chargeable with notice of the further facts discoverable by proper inquiry. So, wherever facts put a person on inquiry, notice will be imputed to him if he designedly abstains from inquiry for the purpose of avoiding notice. A person must use every reasonable means to ascertain such facts as may be open to his observation, and he must exercise reasonable care to ascertain facts coming to his notice." Johnson v. Chicago, B. & Q. R. Co., 202 Iowa 1282, 1288, 1289, 211 N.W. 842. Also see numerous citations both in Volume 66 C. J. S. and in the 1960 pocket part. True, this doctrine is usually confined to cases where one's omission to inquire has had such a result that it would be unconscionable, in view of his conduct, to permit him to assert that he had no knowledge.

In the case at bar we think the facts known to Hansen required him to do more than he did do to determine whether a valid contract had been entered with Hayne. He testified he knew of Hayne's offer. He knew it had been submitted. Yet he chose to accept the word of the owner and his agent, when he might have picked up the telephone and inquired directly of Hayne, or of the real-estate broker, as to the status of Hayne's offer. A similar situation appears in Norwood v. Parker, 208 Iowa 62, 66, 67, 224 N.W. 831, 833. There we said on pages 66 and 67 of 208 Iowa: "Plaintiff was bound to know that Parker's declarations, such as they were, were not binding upon Shuler or Shuler's company. * * * He blindly took it for granted that, because Shuler had an interest in the land, it was of a one-half interest; or, at most, he blindly accepted Parker's statements, knowing, as he was bound to know, that Parker had no authority to bind Shuler. * * * Plaintiff clearly had knowledge of such facts as to put him on inquiry. If reasonable inquiry had been made, plaintiff would have ascertained the facts, and he is chargeable with actual notice of those facts." (Citations)

Under the same reasoning we must charge Hansen with

1031

knowledge of the facts and the actual status of the Hayne offer as herein determined. If he had called the office of Murray Work & Company he would no doubt have been advised that the deal was closed. Having taken this chance, he cannot now complain. Hansen's explanation that he wanted to keep this transaction quiet and not get into a new bidding contest for the property is not convincing nor sufficient. Under such circumstances the trial court found that Hansen had not proven that he was a good faith purchaser for value without notice, and that he had sufficient knowledge to place him on notice. We agree and hold that he has established no claim against this plaintiff for damages for slander of title, nor for any improvements made upon the property after the commencement of this suit.

VIII. There were many interesting problems raised herein, including promissory estoppel, equitable estoppel, and a motion to dismiss, that need not be considered at this time. Plaintiff's motion to dismiss raised the question as to whether the right to an action for slander of title survives the surrender of a claim to the equitable title to the property. It is denied. However, we may say that in view of our determination that no equitable title was ever in defendant Hansen, the question becomes moot, and we need not express an opinion on the question raised therein. Witmer v. Valley National Bank, 223 Iowa 671, 273 N.W. 370.—Affirmed.

All JUSTICES concur.