**John P. DARLING, Appellee,**

v.

**The NINETEEN–EIGHTY CORPORATION and David W. Belin, Appellants.**

**No. 53845.**

Supreme Court of Iowa.

May 5, 1970.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellants.

Austin, Grefe & Sidney, Des Moines, for appellee.

BECKER, Justice.

Action to quiet title to real estate. Defendant corporation counterclaimed for specific performance of an alleged contract for the sale of the farm in controversy. After trial the court held no contract to sell the real estate had been consummated, dismissed the counterclaim and entered judgment quieting title in plaintiff. Defendants appeal. We affirm.

The property consists of 75 acres of land on the southwest corner of Highway 28 and Army Post Road in Polk County which was owned by plaintiff, John P. Darling. For many years Mr. Darling and his family had been represented and advised by Noel T. Robinson, Vice President and Trust Officer of the Central National Bank and Trust Company of Des Moines. These efforts included establishment of trusts and administration of the Darling family affairs. The relationship between Robinson and the Darling family is described as "very, very close".

At the time material to this action the farm was solely owned by Mr. Darling, a resident of Florida. He advised Robinson to increase his (Darling's) income by sale of the farm which, while very valuable, was not bringing a substantial return.

Robinson proceeded to accomplish the sale. Two potential buyers were interested,

David W. Belin and his associates and E. C. Coppola. Mr. Belin's group formed defendant The Nineteen-Eighty Corporation for the sole purpose of buying the property. Belin disavows any personal interest in the transaction.

Because of the narrow point involved we will not recite at length the maneuvers of the two ready, willing and able buyers, each of whom wanted the land but on the most favorable terms possible, and the seller, who wanted the best price obtainable. Suffice to say Belin prepared an offer to buy the property and a real estate contract for such purchase which he took to Robinson. The contract recited the purchase price as $60,000, "of which $10,000 has been paid herewith." This was the price Robinson had in mind and had discussed with his principal, John Darling. Robinson told Belin two documents were not necessary; they were agreed on the details of financing, date of physical delivery, payment of the real estate broker's fee, proration of taxes and the like. He suggested Belin (both men were lawyers) prepare a deed to be forwarded to Darling for his approval and signature. The deed was prepared, delivered to Robinson and forwarded by him with the contract and a covering letter to Darling. No money was paid at this point.

There is little doubt that all persons present at the initial meeting felt a deal had been made subject to Darling's concurrence. But Robinson did not feel he had authority to sell this property (although he had a power of attorney from Darling) and defendants do not claim he made a sale at the time. They claim there was a complete understanding subject only to Darling's acceptance. They contend there was an irrevocable acceptance when Darling signed the contract and deposited it in the mail to Robinson.

The contract and deed were forwarded to Darling by mail and returned by Darling by mail. While the papers were in the mail, Coppola made a higher offer for the farm. Robinson called Darling who instructed his agent not to deliver the contract and deed to defendants.

Robinson notified Belin of the higher offer and a proposal to accept bids on the property with the offers limited to $75,000 or more. Belin stated he considered his corporation had purchased the property and demanded return of the contract. Robinson tore the signatures off the contract copies and delivered them to Belin.

Coppola bid as requested and apparently bought the property for $75,500. Belin filed an affidavit in the Polk County Court House which stated the described property had been purchased by The Nineteen Eighty Corporation. This occasioned the instant action by plaintiff Darling to quiet title and the counterclaim for specific performance by the corporation.

I. Defendants rely entirely on our holdings in Hayne v. Cook, 252 Iowa 1012, 109 N.W.2d 188 and the cases there discussed. If this case is controlled by Hayne defendants are entitled to a reversal, otherwise not.

We could review a large portion of the contract law in determining the relative position of the parties through each step of the negotiations recited above. We find this unnecessary. The law on most of the points is exhaustively reviewed in Hayne v. Cook, supra.

At the time the written contract and deed were submitted to Robinson and forwarded by him to his principal there was no binding contract in effect. Defendants do not dispute this conclusion. They contend the offer made to plaintiff through Robinson, as plaintiff's agent, was accepted when Darling put the papers back in the mail addressed to Robinson. In other words, the parties manifested a mutual, unequivocal assent to the terms of the contract *by communicating a valid offer and acceptance* which was complete when it was put in the mail addressed to Robinson.

"The real nub of this controversy then appears to be whether the acceptance

was 'delivered' to plaintiff in the legal sense of the word." (Loc. cit. Hayne v. Cook, 252 Iowa at page 1020, 109 N.W.2d at page 192.) The issue here is identical with the issue in Hayne v. Cook. In Hayne we stated delivery is a matter of intent and concluded delivery to purchaser was complete when the contract was mailed to a common agent. If the agent was agent for the offeree only, the act of mailing the papers to him would not constitute an acceptance and could be recalled at any time up until actual delivery to the offerer. Restatement, Contracts § 102, Illustration #3; Lucas v. Western Union Telegraph Co., 131 Iowa 669, 109 N.W. 191. This rule was recognized in Hayne v. Cook, 252 Iowa 1012, 1027, 109 N.W.2d 188, where we said:

"* * * While it may be true, as the trustee contends, that without the other circumstance a delivery of the instrument to Shuler, as Blair's agent, for delivery to the plaintiff could be recalled before he made the actual delivery, yet if that agent was also the designated agent of the offerer, such a delivery could not be recalled. * * *."

Thus the Hayne case and this case turn on whether the intermediary was a common or dual agent. In Hayne we concluded Shuler was agent for both parties. The real significance of the conclusion was that such a finding made him agent for the offerer. Under the circumstances then any communication to the offerer's agent would be a communication to the principal. On the de novo review we found, as did the trial court: "* * * At any rate, we think the evidence satisfactorily establishes that Blair made Shuler the custodian for Hayne, that the contract was so delivered to Shuler, and that this was a sufficient delivery to complete its execution as a subsisting contract." (Loc. cit. 252 Iowa at pages 1028, 1029, 109 N.W.2d at page 196.)

■ Here the trial court came to an opposite conclusion and again we agree. We give weight to the trial court's findings but are not bound by them in this de novo review.

■ The complexity of the fact situation in the Hayne case precludes detailed comparison with this case. Here we are impressed with the long continued agency relationship between plaintiff and Robinson. This relationship had continued between the entire Darling family and Robinson for a period of some ten years prior to the negotiations in question. We have no hesitancy in viewing the relationship as confidential and fiduciary in character.

The gist of defendants' argument is that because Robinson dictated the terms of the sale, eliminated the use of the "offer to buy", and agreed to hold the deed pending performance of the contract he became a common agent. We cannot agree. As confidential agent for Darling, Robinson had a duty not to become a common agent without Darling's informed consent. Murphy v. Brown, 252 Iowa 764, 770, 108 N.W.2d 353; Restatement, Agency, Second Ed., § 391; Mecham, Law of Agency, Second Ed., §§ 1189, 1206, 2138. There is no evidence such information or consent was ever given.

■ Other than the three factors mentioned above there is also no evidence that defendants attempted to make Robinson *their* agent. Defendants' statement, "* * * *he was also the designee of defendant-buyer to receive the acceptance, * * *.*" (Emphasis supplied), is not, in our view, substantiated by the record. No escrow duties would arise until they actually made the contract, the $10,000 down payment was delivered and the deed placed in the escrow agent's hands. Stated otherwise any common agency was for the performance of the contract not for its negotiation and acceptance. There is nothing to indicate defendants treated Robinson as their agent during negotiations.

Defendants insist Robinson was an escrow agent from the moment he trans-

mitted the documents and said in the letter, "said deed will be held by us in escrow pending final payment on the contract of sale." These words contemplate (1) an escrow agency after the contract is made and (2) for the single purpose of holding the deed pending final payment. Defendants make more out of the planned escrow arrangement than we are willing to ascribe to it.

■ Belin knew he was dealing with the property owner's agent. The agent was not authorized to bind his principal and defendants don't claim the agent did so, or even attempted to do so. Darling's act in forwarding the papers to his own agent did not constitute an acceptance until delivery to the vendee was actually accomplished. Until that time Darling had a right to change his mind. This is what happened. His motives are immaterial. The final commitment had not been made.

Affirmed.

All Justices concur, except UHLEN-HOPP, J., who takes no part.